UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
WILLIAM M. ALLEN,

                              :

                Petitioner,                REPORT &
                                :    RECOMMENDATION

      -against-           : 06 Civ. 7205 (RJS)(MHD)

                                :

NEW YORK CITY DEPARTMENT OF CORRECTION,
OFFICER FITZPATRICK; FALLON (#952);  :
JOHN DOE CORRECTION OFFICER (WHO WORKED
THE 3-11PM SHIFT IN NIC RECEIVING ROOM :
AT RIKERS ISLAND ON JULY 31, 2003),

                                :

              Defendants.
----------------------------------------x

TO THE HONORABLE RICHARD J. SULLIVAN, U.S.D.J.:

      Plaintiff William M. Allen, formerly an inmate in the New York City jail system, and currently incarcerated in a New York State prison, commenced this pro se lawsuit under 42 U.S.C. § 1983 against the New York City Department of Correction ("DOC") and two identified DOC employees and a John Doe defendant. The lawsuit stems from an assault on plaintiff by three other inmates at the North Infirmary Command ("NIC") in the Rikers Island facility. In substance, plaintiff alleges that Correction Officer Dennis Fitzpatrick intentionally instigated the attack on him by his fellow inmates and stood by, without protecting him, while the

assault was underway, leaving plaintiff with serious injuries, including broken teeth, a swollen and bleeding face, cracked ribs, a collapsed lung and a concussion. Allen asserts that, in the wake of this attack and his escape from his assailants, Captain Richard Fallon denied him prompt medical attention, choosing instead to ignore his pleas for help and to bring him to a holding cell rather than to the prison medical facility. He also complains that Fallon ignored his pleas to arrest or press charges against his attackers.

Allen goes on to assert that his Eighth Amendment rights were later violated by an unidentified correction officer following his return to the prison from his resulting hospital stay. According to plaintiff, this John Doe defendant placed him in general housing despite paperwork stating that he was to be placed in the prison infirmary.

At the conclusion of discovery, defendants Fitzpatrick and Fallon have moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or for summary judgment on a variety of grounds.[1] First,

---

[1] Fitzpatrick and Fallon are apparently the only two defendants who were served. The third proposed individual defendant has never been identified, and defendants' counsel reports, without contradiction, that plaintiff never served the Department of Correction. (Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Compl. and for Summ. J., 2 n.1).

they argue that the plaintiff's claims are barred by the statute of limitations because the complaint was filed by the Clerk of the Court more than three years after the claims arose, and that dismissal is justified because the plaintiff did not accomplish service within the time frame defined by Fed. R. Civ. P. 4(m). Second, defendant Fallon seeks summary judgment on plaintiff's medical claim because he contends that the delay in providing plaintiff treatment was too brief to establish plaintiff's claim. He also asserts that Allen's complaint about his failure to arrest or charge the assailants is legally insufficient, as there is no constitutional right to have an officer make an arrest. Both defendants next seek to invoke a qualified-immunity defense, apparently as a matter of summary judgment. Finally, defendants argue that plaintiff cannot maintain any state-law claims against the defendants because he failed to timely file suit as required by the New York State General Municipal Law and also that his state-law claims -- if any -- against the identified defendants are barred by N.Y. Correct. Law § 24.

       For the reasons that follow, we recommend that the motion be denied in part and granted in part.

Background

Since defendants are seeking relief in the form of summary judgment, as well as a Rule 12 dismissal, we briefly describe the facts as reflected in the current record as well as in the allegations of the complaint. In doing so, we note that the record concerning the key events largely parallels Allen's pleading.

A. The Record

In July 2003, plaintiff was housed as a pre-trial detainee in the George R. Vierno Center ("GRVC") on Rikers Island. (See Decl. of Gabriel Harvis, Esq., executed Mar. 10, 2009, Ex. D, Movement History). Having been convicted of raping his own daughter, on July 21, 2003 he was sentenced to eighty-two years in prison. (Id., Ex. C at 39-40, 46 & Ex. F). The next day the New York Daily News, a newspaper read by inmates in both GRVC and NIC, published an article that specifically mentioned Allen by name and referenced his rape conviction. (Id., Ex. C at 48-50 & Ex. E). DOC officials, recognizing a threat to Allen's safety, recommended that he be placed in protective custody. (Id. at ¶ 7 & Ex. G, DOC Mem. dated July 22, 2003). Allen consented to protective custody, and he was

transferred from GRVC to a cell in NIC segregated housing unit 3A that same day. (Id., Ex. D).


Allen testified at his deposition that about one or two days after his transfer, he and defendant Fitzpatrick, a regular housing unit officer in NIC on the 3 to 11 p.m. shift, got into a heated discussion regarding plaintiff's telephone PIN. (Harvis Decl., Ex. C at 65-66. See also Compl. at p. 3). In retaliation, Allen claims, Fitzpatrick told three inmates about his conviction for a sex crime, including inmate Alexander Pasury; indeed, Allen testified that prior to the assault one of his attackers told him that Fitzpatrick had divulged this information. (Harvis Decl., Ex. C at 54-56. See also Compl. at p. 3;).


Allen recounted that at approximately 10:50 p.m. on July 28, 2003, ten minutes before lock-in, he was assaulted by Pasury and two other unnamed inmates -- including the inmate who had previously recounted his conversation with Office Fitzpatrick -- while Fitzpatrick watched and did nothing. (Compl. at p. 3; Harvis Decl., Ex. C at 60, 62-63). Prior to this incident, Allen asserts, he had never had any confrontations with either officers or inmates on Rikers Island, including Pasury. (Compl. at p. 3B. See also Harvis Decl., Ex. C at 63, 68-69). As described by plaintiff, the

attack involved both punches and kicks, and lasted for some minutes. He testified that Fitzpatrick was present for the whole incident, watching as it unfolded, but did nothing to stop it despite Allen's screams for help. Eventually Allen managed to escape from the three men and flee down the hall. (Harvis Decl., Ex. C at 60, 62-65).

As a result of the assault, Allen sustained a swollen and bleeding face, broken teeth, cracked ribs, a collapsed left lung, and a concussion. (Compl. at p. 3; Harvis Decl., Ex. C at 65-67). When Fallon, who was not present at the physical altercation, came to Allen's unit shortly thereafter, Allen complained of chest pain and difficulty breathing and asked Fallon to bring him to the NIC hospital. (Pl.'s Aff. in Opp'n to Defs.' Mot. for Summ. J., executed Apr. 21, 2009, pp. 4-5). According to plaintiff, Fallon refused to do so, mocking the complaints as baseless. Instead Fallon took plaintiff to a receiving room and placed him in a holding cell, where he remained doubled over in pain. (Harvis Decl., Ex. C at 69-70; Pl.'s Aff. at p. 4; Compl. at p. 3A). On the way to the holding cell, Allen testified, he complained to Fallon that he had been assaulted by three inmates because Fitzpatrick had told them about the nature of his conviction and that Fitzpatrick

had just watched the assault.[2] (Harvis Decl., Ex. C at 69-70. <u>See also</u> Pl.'s Aff. at p. 4; Compl. at p. 3A). Also at that time, Allen requested that Fallon arrange for the arrest of his three attackers, but Fallon refused to do so. (Compl. at p. 3A; Harvis Decl., Ex. C at 69-70; Pl.'s Aff. at p. 6). While in the holding cell, plaintiff alleges, he was in extreme pain, had difficulty breathing, and started having a panic attack. (Pl.'s Aff. at pp. 4-5; Harvis Decl., Ex. C at 71-72).

Plaintiff remained in the holding cell for approximately thirty minutes, at which point medical personnel took him to the prison clinic. At 11:25 p.m., approximately thirty-five minutes after the incident, Allen was examined by a Dr. Bashir, who indicated that Allen's injuries were serious and constituted a life-threatening emergency. (Harvis Decl., Ex. H). Subsequently, Allen was taken to East Elmhurst Hospital, where he was diagnosed with multiple contusions and a collapsed lung. (<u>Id.</u>, Ex. I). In the course of his treatment, Allen underwent surgery for his collapsed lung, which involved the insertion of a tube into his chest, and he

---

[2] There is no indication in the record that the alleged attackers suffered any injuries. (<u>See</u> Compl. at p. 3A). According to Allen, Fitzpatrick filed a report alleging that he had broken up an altercation that Allen had instigated, and inmate Pasury falsely stated that Allen had tried to attack him. (<u>Id.</u> at p. 3B).

remained in the hospital for three days. (Compl. at p. 3A; Harvis Decl., Ex. C at 73).

After being released from East Elmhurst Hospital on July 31, 2003, Allen was sent back to NIC with instructions to be admitted to the NIC Infirmary. An unnamed correction officer working the 3-to-11 p.m. shift in the NIC receiving room called Allen "a piece of shit, and a snitch" and informed Allen that he had told another inmate about the nature of Allen's conviction. (Compl. at pp. 3A-3B; Harvis Decl., Ex. C at 75). Furthermore, Allen contends that this officer purposely ignored instructions to send him to the NIC Infirmary and instead sent him to housing unit 2B, a segregated house located in the NIC Main. (Compl. at p. 3A; Harvis Decl., Ex. C at 75-77). The next morning Allen awoke to find he was bleeding from an open wound and was rushed to the clinic, where the doctor expressed dissatisfaction that Allen had not been placed in the infirmary, as specified by his paperwork. (Compl. at p. 3A; Harvis Decl., Ex. C at 77-78).

B. <u>Procedural History</u>

In the wake of the incident, Officer Fitzpatrick filed prison disciplinary charges against plaintiff for "fighting." (Harvis Decl., Ex. C at 88). Following a hearing, the charges against plaintiff were dismissed. (<u>Id.</u>, Ex. C at 89). Allen reports having heard that one of his assailants was also charged with a similar offense arising from the incident, although he does not know the disposition of that charge. (<u>Id.</u>).

Having been transferred to the custody of the New York State Department of Correctional Services ("DOCS"), on July 24, 2006 Allen delivered his complaint in this action to prison authorities to be sent, via certified mail, to the <u>Pro Se</u> Clerk of this court. (Compl. at p. 7; Harvis Decl., Ex. C at 91). Although the complaint was received and stamped by the <u>Pro Se</u> Office on July 27, 2006, it was not filed with the Clerk of the Court until September 20, 2006 because Allen had enclosed an outdated Prisoner Authorization form. (Pl.'s Aff., Ex. B). The new form -- which increased the filing fee from $250.00 to $350.00 -- had taken effect on April 10, 2006, approximately three months before the complaint was sent to the <u>Pro Se</u> Office (<u>Id.</u>). Allen later received and returned the updated form, and the Clerk of the Court filed the complaint and issued a

9

set of summonses on September 20, 2006. (Harvis Decl., Ex. B at dkt entry #2).


By letter dated January 17, 2007, Allen requested additional time to have the United States Marshals Office effect service upon the defendants. The basis for the request was his report that the DOCS Transportation Service had lost crucial papers during his transfer from Attica to Sullivan Correctional Facility. (Letter from Pl. to Court, dated Jan. 17, 2007). Allen also requested a so-called <u>Valentin</u> order[3], seeking the court's assistance to identify the John Doe officer who was working in the NIC receiving room on July 31, 2003, and to determine where to serve the New York City Department of Correction. The court granted Allen an additional thirty days to provide the complaint to the Marshals Service and another forty-five days for the complaint to be served. (Endorsed Order dated Mar. 23, 2007, dkt entry #4). Additionally, the court issued a <u>Valentin</u> order on March 30, 2007, instructing the Corporation Counsel to identify the John Doe correction officer and the location for service of the DOC. (Order dated Mar. 30, 2007, dkt entry #5).

_____

[3] <u>Valentin v. Dinkins</u>, 121 F.3d 72 (2d Cir. 1997) (per curiam) (case in which the Second Circuit made clear that a <u>pro se</u> litigant is entitled to assistance from the district court in identifying defendants, especially when plaintiff is incarcerated).

The Marshals served defendant Fallon on May 3, 2007. (Marshals Process Receipt dated May 3, 2007, dkt entry #6). The Marshals Service attempted to effect service on Fitzpatrick on May 8, 2007, but was unable to identify which of several correction officers with the same last name was the intended defendant. (Marshals Process Receipt dated May 8, 2007, dkt entry #7).

Defendants' counsel responded several months later to the Valentin Order, stating that the City was unable to locate the John Doe correctional officer and could not identify Fitzpatrick based on the information provided. Counsel went on to request that the court instruct plaintiff to withdraw the complaint because the action was barred by the applicable statute of limitations. (Letter to the Court from Gabriel Harvis, Esq., dated July 13, 2007). Judge Karas declined this request, ruling without prejudice that the complaint had been filed within the statute of limitations and that Allen has been diligent under the circumstances in attempting to serve process. (Endorsed Order dated Sept. 7, 2007, dkt entry #10). Defendant Fallon filed an answer to the complaint on November 13, 2007. (See Def.'s Answer, dkt entry #13).

The City finally provided Allen with information regarding the identity of defendant Fitzpatrick in a letter dated January 22,

11

2008. (Harvis Decl., Ex L at 2). During a February 1, 2008 status conference, the court confirmed that Allen had enough information to serve Fitzpatrick. (Id., Ex. L at 3). As of a November 6, 2008 status conference, however, Fitzpatrick had still not been served, and during the conference the court inquired about this failure. (Id., Ex. M at 13). Allen responded that he had not known that he had had to arrange again to serve Fitzpatrick and that he did not have papers with which to serve him. (Id., Ex. M at 14-16).[4] The court therefore granted Allen until December 8, 2008 to serve Fitzpatrick (id., Ex. M at 16; see also Order dated Nov. 7, 2008, dkt entry #30), a deadline that was met when the Marshals served Fitzpatrick on December 8. (Marshals Process receipt dated Dec. 8, 2008, dkt. #36).

-----

## Analysis

We first detail the standards governing defendants' motion, whether deemed a request for dismissal under Rule 12(b)(6) or as an

-----

[4] During the February 1 status conference the court informed Allen that he would need to coordinate service of defendant Fitzpatrick with the court's Pro Se office and the Marshals Service. (Id., Ex. L at 3). However, during the November 6 conference plaintiff stated that he could not recall that exchange, a failure that he attributed to medical problems he was suffering around the time of the February conference. (Id., Ex. M at 15).

application for summary judgment. We then evaluate each of defendants' arguments in turn.


   A. Rule 12(b)(6) Standards


     We start by noting the stringency of the standard that the movant must meet in order to obtain dismissal for failure to state a claim. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); accord, e.g., Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 476 (2d Cir. 2006). In assessing such a motion, the court must assume the truth of the well-pled factual allegations of the complaint and must draw all reasonable inferences against the movant. See, e.g., Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006); Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996).


     The traditional test on a Rule 12(b)(6) motion required that the complaint not be dismissed unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Still, 101 F.3d at 891

(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Supreme Court has recently rejected this formulation, however, and hence a complaint is now subject to dismissal unless its factual allegations, if credited, make the claim "plausible." See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 560-61 (2007). The court thus must look first to the well-pled factual allegations, determine whether they are plausible, and then determine whether those plausible allegations, if proven, suffice to establish liability. See, e.g., Iqbal, 129 S.Ct. at 1949-50. Twombly does not impose "a universal standard of heightened fact pleading, but . . . instead requir[es] a flexible 'plausibility standard', which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), rev'd on other grounds sub. nom. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)(emphasis in original). In short, the pleading must "'raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555).


   In addressing a Rule 12(b)(6) motion, the court may not consider evidence proffered by the moving party. Rather, it is

limited to reviewing the four corners of the complaint, any documents attached to that pleading or incorporated in it by reference, any documents that are "integral" to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice. See, e.g., ATSI, 493 F.3d at 98; Leonard F. v. Israel Disc. Bank, 199 F.3d 99, 107 (2d Cir. 1999); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).


   B. Rule 56(c) Standards


   The court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004). It is axiomatic that the role of the court on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986); see, e.g., Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249-52 (1986); Howley v. Town of
Stratford, 217 F.3d 141, 150-51 (2d Cir. 2000).


    The party moving for summary judgment bears the initial burden
of informing the court of the basis for its motion and identifying
those portions of the "pleadings, the discovery and disclosure
materials on file, and any affidavits" that demonstrate the absence
of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see,
e.g., Celotex, 477 U.S. at 323; Koch v. Town of Brattleboro, 287
F.3d 162, 165 (2d Cir. 2002). In making this judgment, the court
must view the record in the light most favorable to the non-moving
party. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59
(1970); O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 61 (2d Cir.
2002); Howley v. Town of Stratford, 217 F.3d 141, 150-51 (2d Cir.
2000). If the non-moving party has the burden of proof on a
specific issue, the movant may satisfy its own initial burden by
demonstrating the absence of evidence in support of an essential
element of the non-moving party's claim. See, e.g., Celotex, 477
U.S. at 322-23, 325; PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101,
105 (2d Cir. 2002); Goenaga v. March of Dimes Birth Defects Found.,
51 F.3d 14, 18 (2d Cir. 1995). If the movant fails to meet its
initial burden, however, the motion will fail even if the opponent
does not submit any evidentiary materials to establish a genuine

16

factual issue for trial. See, e.g., Adickes, 398 U.S. at 160; Giannullo v. City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003).

If the moving party carries its initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact. See, e.g., Beard v. Banks, 548 U.S. 521, 529 (2006); Celotex, 477 U.S. at 322; Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). In doing so, the opposing party cannot "rely merely on allegations or denials" of the factual assertions of the movant, Fed. R. Civ. P. 56(e)(2); see, e.g., Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 59-60 (2d Cir. 2004), nor may he rely on his pleadings or on merely conclusory factual allegations. See, e.g., Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). He must also "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005). Rather, he must present specific evidence in support of his contention that there is a genuine dispute as to the material facts. See, e.g., Celotex, 477 U.S. at 324; Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994).

17

To demonstrate a "genuine dispute," the opposing party must come forward with sufficient evidence to permit a reasonable jury to return a verdict in his favor. See, e.g., Anderson, 477 U.S. at 242, 248; Matsushita, 475 U.S. at 587; Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001). Alternatively, if "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. Schering Corp. v. Home Ins. Co., 712 F.2d 4, 9-10 (2d Cir. 1983); see also Rogath v. Siebenmann, 129 F.3d 261, 267 (2d Cir. 1997); R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997).

## C. Defendants' Procedural Arguments

Before challenging the substance of plaintiff's claims, defendants seek dispositive relief on two theories. First, they contend that the complaint is barred by the statute of limitations, measured as of the time that the pleading was filed with the Clerk of the Court in September 2006. Second, they argue that plaintiff failed to serve defendants Fitzpatrick and Fallon within 120 days after the filing, thus justifying dismissal under Fed. R. Civ. P. 4(m). We address these arguments seriatim.

18

### 1. Statute of Limitations

Defendants seek either dismissal of the complaint or summary judgment based on plaintiff's asserted failure to satisfy the applicable statute of limitations. We disagree.

New York's three-year statute of limitations for general personal injury actions applies to Allen's section 1983 claims. Owens v. Okure, 488 U.S. 235, 250-251 (1989). See Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 331-32 (2d Cir. 1997) ("[T]he statute of limitations for a claim under § 1983 that accrued in New York is three years."). Federal law dictates that a section 1983 claim accrues on the date when plaintiff knows or has reason to know of the injury that forms the basis of his action. See Morse v. Univ. of Vermont, 973 F.2d 122, 125 (2d Cir. 1992); Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980); Verley v. Goord, 2004 WL 526740, *7 (S.D.N.Y. Jan. 23, 2004). Given the allegations in the complaint, plaintiff's claims for failure to protect and delay of medical care arose on July 28, 2003 and hence the limitations deadline for filing was July 28, 2006.

Under the prison-mailbox rule, a <u>pro</u> <u>se</u> prisoner's complaint is deemed to be filed on the date the complaint is delivered to prison officials for transmittal to the court. <u>Dory v. Ryan</u>, 999 F.2d 679, 682 (2d Cir. 1993) (citing <u>Houston v. Lack</u>, 487 U.S. 266, 270 (1988)); <u>accord</u> <u>Noble v. Kelly</u>, 246 F.3d 93, 97-98 (2d Cir. 2001). "This 'prison mailbox' rule is justified by the litigant's dependence on the prison mail system and lack of counsel to assure timely filing with the court." <u>Noble</u>, 246 F.3d at 97.

There is no dispute that plaintiff was incarcerated when he drafted his complaint, and he represents, without contradiction, that he handed the signed pleading to his jailers on July 24, 2006, a date that also appears at the tail-end of the complaint above the signature line. Moreover, it is equally undisputed that the <u>Pro</u> <u>Se</u> Clerk of the Court received the complaint only a few days later, since it was file-stamped by the <u>Pro</u> <u>Se</u> Clerk on July 27, 2006. In short, the complaint was timely "filed."

In resisting this conclusion, defendants argue, in substance, that the prison-mailbox rule should be disregarded because the delay in filing the complaint with the Clerk of the Court was attributable to plaintiff using an outdated Prisoner Authorization form, a failing that plaintiff himself confirms. (Pl.'s Aff., Ex.

20

B). Defendants, in their reply memorandum, argue that Allen's attempted filing should not be covered by the prison-mailbox rule because his use of the improper form implicated the payment of his filing fee, and the filing fee must be paid or otherwise accounted for as a prerequisite to filing for limitations purposes. (Reply Mem. of Law in Further Supp. of Defs.' Mot. to Dismiss the Compl. and for Summ. J., 3-5). Thus, according to defendants, plaintiff's filing was not actually complete until he returned the correct form on September 20, 2006, well after the statute of limitations had run.

Defendants' argument is plainly without merit. Being incarcerated, plaintiff was dependant upon the prison personnel to provide him with the forms necessary to file a complaint, just as he was dependant on them to forward his complaint and the forms of the court; indeed, that is the very premise of the prison-mailbox rule. The fact that he was provided with an outdated form, the effectiveness of which had lapsed only three months before the date of the complaint, should therefore not bar the application of the prison-mailbox rule.[5]

---

[5] Defendants cite no legal authority supporting their demand for the articulated proposed exception to the mailbox rule, nor are we aware of any, and for good reason.

21

Even if the prison-mailbox rule might in theory be disregarded if a plaintiff-inmate unjustifiably ignored governing procedural requirements, Allen's situation would qualify for equitable tolling of the applicable statute of limitations. "'Equitable tolling is a rare remedy to be applied in unusual circumstances.'" Alaimo v. Bd. of Educ., 650 F. Supp. 2d 289, 295 (S.D.N.Y. 2009) (quoting Wallace v. Kato, 549 U.S. 384, 396 (2007)). "When determining whether equitable tolling is applicable, [the court] must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period [he] seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)).

The record justifies a finding that the requirements for equitable tolling are met in this case. Plaintiff diligently complied with the instructions of the updated Prisoner Authorization form when it was sent to him. The instructions on that form stated that he had forty-five days to complete and return the form, and he in fact timely sent the completed form to the Pro Se Office. (Pl.'s Aff., Ex. D at p. 2). Furthermore, the

22

circumstances are extraordinary in that plaintiff was incarcerated and therefore could not obtain the form on his own, but rather was dependant upon prison officials and the Pro Se Office to provide him with the correct Prisoner Authorization form. We reject defendants' argument that Allen was neglectful and that the delay in filing was not excusable; rather, we conclude that equitable tolling should apply in this situation even if the prison-mailbox rule were not dispositive.

Thus, under either the prison-mailbox rule or equitable tolling, plaintiff's complaint should be deemed to have been filed within the three-year statute of limitations.[6]

---

[6] To the extent that defendants argue that failure to promptly accomplish service implicates the tolling of the statute of limitations, they are mistaken. See Fed. R. Civ. P. 3 (action commences with filing of complaint); see also Zapata v. City of New York, 502 F.3d 192, 194 n.4 (2d Cir. 2007) (noting that the statute of limitations begins to run again only after plaintiff's case is actually dismissed for failure to comply with Rule 4(m)'s service requirements). To the extent that defendants press plaintiff's failure to comply with Fed. R. Civ. P. 4(m) as a basis for dismissing the complaint or awarding summary judgment, we deal with their argument's below.

## 2. Service of Process

Alternatively, defendants seek either dismissal of the complaint or summary judgment in their favor based on plaintiff's purported failure to timely serve them under Fed. R. Civ. P. 4(m). This application should be denied.

Fed. R. Civ. P. 4(m) currently provides, in substance, that if the plaintiff fails to serve a defendant within 120 days after filing of the complaint but shows "good cause" for that failure, the court is to grant an extension of time for service to be accomplished. If the plaintiff fails to show good cause, the court may, in its discretion either dismiss the complaint without prejudice or grant an extension of time to serve. See, e.g., Henderson v. United States, 517 U.S. 654, 658 n.5 (1996); Zapata, 502 F.3d at 194-97.

In the case at hand, plaintiff was given two extensions to effect service of process on defendants Fallon and Fitzpatrick. He complied with both.

On January 17, 2007 -- one day before the 120-day deadline
expired -- Allen requested additional time to have the U.S.
Marshals Service effect service upon defendants. In support of that
request, he reported that the DOCS Transportation Service had lost
crucial legal papers relating to his case when he was transferred
from Attica to Sullivan Correctional Facility. He further
documented the loss and his effort to remedy the situation through
the prison system. (Pl.'s Aff., Ex. F). In response, Judge Karas
granted the request and by order dated March 23, 2007, gave Allen
30 days to provide a copy of his complaint to the Marshals Service
(Endorsed Order dated Mar. 23, 2007, dkt entry #4). The order also
gave the Marshals Service 45 more days to serve the defendants.
(Id.). On May 3, 2007, within the time permitted by the court, the
Marshals effected service upon Fallon.

With respect to defendant Fitzpatrick, the Marshals Service
attempted service on May 8, 2007, but could not carry it out
because there were several correction officers named Fitzpatrick
who worked at the Rikers Island facility, and as a result the
Marshals needed the defendant's shield number. (Harvis Decl., Ex.
K).

In the wake of this failure, defendants' counsel sought more time to respond to the court's March 2007 <u>Valentin</u> order, which directed the City to provide information to identify the unserved defendants. (Letter to the Court from Gabriel Harvis, Esq., dated May 15, 2007). The court extended the time to respond until July 15, 2007. (Endorsed Order dated June 11, 2007, dkt entry #8).

On July 13, 2007 defendants' counsel wrote to the court seeking, in substance, an order dismissing the complaint as time-barred because service was untimely. Judge Karas denied that application, finding that plaintiff "has been diligent" and that the complaint had been filed within the statute of limitations. (Endorsed Order dated July 13, 2007, dkt entry #10). It was not until late January 2008 that plaintiff finally received from the Law Department the information needed to identify the correct Officer Fitzpatrick. (Harvis Decl., Ex. L at 2-3).

At a conference on February 1, 2008, the court confirmed that plaintiff had sufficient information to arrange for service on Fitzpatrick, (<u>id.</u>, Ex. L at 3) but plaintiff failed to do so. Nonetheless, during a November 6, 2008 status conference the court further extended plaintiff's time to serve defendant Fitzpatrick until December 8, 2008. The basis for this directive was

plaintiff's proffer of his medical history and the apparent failure of the Pro Se Office to send him the papers needed for a second try at service. This presentation evidently satisfied the court that there was sufficient reason to exercise judicial discretion in plaintiff's favor under Rule 4(m). (Harvis Decl., Ex. M at 13-17. See also Order dated Nov. 7, 2008, dkt entry #30). There is no dispute that plaintiff managed to serve Fitzpatrick within the last specified time period.

These prior extensions of time for plaintiff to effect service of process are now law of the case, and by themselves justify a rejection of defendants' motion. "The law of the case doctrine requires a court to 'adhere to [its] own decision at an earlier stage of the litigation unless there are cogent or compelling reasons not to, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Richards v. City of New York, 433 F. Supp. 2d 404, 416 (S.D.N.Y. 2006) (quoting New York State Nat'l Org. for Women v. Terry, 961 F.2d 390, 395-96 (2d Cir. 1992)). Plaintiff fully complied with the extensions granted by the court, and defendants provide no basis for revisiting the prior

rulings at this point, nor do they argue clear error in the prior decisions.[7]

Finally, even if we ignored the law-of-the-case principle, the outcome would not change. As stated, the plaintiff generally acted diligently, with the one exception being his failure to serve defendant Fitzpatrick for many months after being given identifying information in January 2008. As noted, however, he proffered his medical status as an explanation, including an impaired memory, as well as the lack of service papers, and the District Court was fully justified in granting him a limited extension in November 2008 to serve this defendant. In this respect, we note that even if plaintiff's proffer had not amounted to good cause, the court's

---

[7] The defendants also argue that the time taken for the U.S. Marshals to serve defendants is attributable to the plaintiff. Specifically, defendants argue that Allen made no efforts to obtain information beyond the surname "Fitzpatrick" before commencing this action and asking the Marshals Service to perform service. (Defs.' Mem. at 11, 13-14). This argument should be rejected as, in effect, an untimely attempt to revisit the court's prior extension orders. Moreover, it is baseless since Allen, as a state prisoner, was plainly not in a position to obtain the information necessary to determine which Officer Fitzpatrick was the correct defendant. Indeed, this is the rationale for issuing the Valentin order. Similarly, the defendants' argument that the plaintiff's letter dated January 17, 2007 to Judge Karas was not a timely request for an extension of the Rule 4(m) time limit should be rejected. Judge Karas' decision to grant an extension for service under Rule 4(m) is law of the case and that decision was well within the court's discretion.

exercise of discretion under Rule 4(m) to extend the deadline was entirely defensible.

The courts have not offered a great deal of elucidation of the "good cause" concept in circumstances analogous to those found here. In part this may be attributable to the fact that, even if good cause is not found, the court may deny dismissal, and hence in many cases the court focuses on that discretionary authority in addressing these types of motions. E.g., Hollomon v. City of New York, 2006 WL 2135800, *3-4 (E.D.N.Y. July 31, 2006); Bunim v. City of New York, 2006 WL 2056386, *3 (S.D.N.Y. July 21, 2006); Zeballos v. Tan, 2006 WL 1975995, *6 (S.D.N.Y. July 10, 2006); Vasquez v. Mill, 2005 WL 1902913, *3 (S.D.N.Y. Aug. 8, 2005). Indeed, the Second Circuit has recently observed that it would not require bifurcated findings, first as to "good cause" and then as to discretionary denial of dismissal, since "the two steps inevitably involve a weighing of overlapping equitable considerations and we owe deference to the district court's exercise of discretion whether or not it based its ruling on good cause." Zapata, 502 F.3d at 196-97.

As a general matter, "[g]ood cause is measured against the plaintiff's reasonable efforts to effect service and the prejudice

29

to the defendant from the delay." AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P., 197 F.R.D. 104, 108 (S.D.N.Y. 2000). Thus courts consider particularly "whether 'the plaintiff was diligent in making reasonable efforts to effect service, including but not limited to whether plaintiff moved under FRCP 6(b)' for an extension of time in which to serve the defendant." Id. (quoting Gordon v. Hunt, 835 F.2d 452, 453 (2d Cir. 1987)). Some of the language used by the courts suggests a fairly stringent "good cause" standard -- for example, the observation that "[g]ood cause should generally only be found in exceptional circumstances in which the plaintiff's failure was beyond his or her control." Singh v. Maresco, 2007 WL 2471690, *6 (E.D.N.Y. May 23, 2007). That approach might not excuse even a pro se litigant's error as to the mechanics of service, although some courts have at least implied that errors of an unrepresented party might fall under the "good cause" standard more readily than those of a party's attorney. See, e.g., Zeballos, 2006 WL 1975995, at *6 (invoking inter alia plaintiff's pro se status in finding that good cause existed); AIG Managed Mkt., 197 F.R.D. at 108 ("mere inadvertence, neglect, or mistake of a litigant's attorney does not constitute good cause.") (emphasis added). See also Bogle-Assegai v. Connecticut, 470 F.3d 498, 509 (2d Cir. 2006) (noting that plaintiff was represented by

counsel in concluding that district court did not abuse discretion
by dismissing for failure to effect service under Rule 4(m)).

In this case we need not linger over whether the record
reflects good cause since, in any event, the circumstances weighed
in favor of forgiving the plaintiff's delay in making proper
service. Among the pertinent factors in guiding the court's
discretion -- in addition to the plaintiff's diligence -- are:

> "(1) whether the applicable statute of limitations would
> bar the refiled action; (2) whether the defendant had
> actual notice of the claims asserted in the complaint; (3)
> whether the defendant had attempted to conceal the defect
> in service; and (4) whether the defendant would be
> prejudiced by the granting of plaintiff's request for
> relief from the provision."

Hollomon, 2006 WL 2135800, at *3 (quoting E. Refractories Co. v.
Forty Eight Insulations, Inc., 187 F.R.D. 503, 506 (S.D.N.Y.
1999)).[8] These considerations largely counsel in favor of denying
dismissal.

---

[8] The 1993 Advisory Committee Notes to Rule 4(m) specify, as
one example of a proper basis to excuse late service, the
prospect that if the complaint were dismissed, the refiled suit
would be time-barred. Federal Civil Judicial Procedure and Rules,
Advisory Committee Notes to 1993 Amendments of Fed. R. Civ. P.
4(m), 56 (West 2009 rev. ed.).

Plaintiff was reasonably diligent in pursuing service except for a period when he may have been medically impaired. Moreover, the remaining pertinent factors largely militate against dismissal. If the complaint were dismissed at this stage, even without prejudice, plaintiff's claims would, as defendants themselves insist, almost certainly be time-barred. See, e.g., Zapata, 502 F.3d at 194 n.4; Hollomon, 2006 WL 2135800, at *4. We also note that plaintiff served Fallon and attempted service on Fitzpatrick with relative promptitude, that defendants' counsel had actual notice of the allegations against Fitzpatrick in the complaint when Fallon was served, and that defendants' counsel greatly delayed the provision of identifying information for Fitzpatrick.[9] Defendants also make no effort on this motion to suggest, much less demonstrate, any prejudice caused by the delay in their being properly served. This too supports the conclusion that dismissal at this stage would be inappropriate.

The only factor that does not squarely point in the same direction is that the defendants did not seek to conceal the problems with plaintiff's efforts at service. Although such

---

[9] From the entry of the Valentin order in March 2007, more than nine months passed before the information required for service of defendant Fitzpatrick was provided to plaintiff.

misconduct likely would compel denial of the motion, <u>see</u>, <u>e.g.</u>,
<u>McGregor v. United States</u>, 933 F.2d 156, 161 (2d Cir. 1991)
(discussing <u>Zankel v. United States</u>, 921 F.2d 432, 436-38 (2d Cir.
1990)), the absence of such an effort to mislead does not offer any
significant weight to the case for dismissal, particularly when the
other considerations strongly suggest that the case should be
allowed to survive so that it may be addressed on the merits.


    Therefore, we decline to adopt either of defendants'
procedural arguments as a basis for dismissing the complaint or
granting defendants summary judgment.


    <u>D. Defendant Fallon's Attack on Plaintiff's Claims</u>


    Defendants' motion next challenges plaintiff's claims as
asserted against Captain Fallon. These include the contention that
Fallon violated his Eighth Amendment rights by not taking him to
the medical facility, thus denying him treatment for his injuries
for a period of time, and his purported failure to arrest or bring
charges against Allen's three assailants. Defendants seem to rest
their argument about the medical claim on the evidentiary record,

33

thus suggesting that they seek summary judgment. As for the other claim, they seem to argue that it fails as a matter of pleading.

### 1. Denial of Prompt Medical Attention

To establish a claim for denial of rights based on the delay of medical care, an inmate plaintiff must demonstrate "'deliberate indifference to [his] serious medical needs.'" Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This two-part test embodies both an objective and a subjective component. The physical condition of the plaintiff must be sufficiently serious and the failure to render proper care must result from "a sufficiently culpable state of mind." Id. at 66 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The Second Circuit has commented favorably on defining a serious medical condition as a situation in which "'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)) (internal quotation

marks omitted). As more recently described, the deprivation must be "'sufficiently serious,'" that is, "'one that may produce death, degeneration, or extreme pain.'" Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (quoting Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998)). Among the relevant factors in what is a fact-intensive inquiry, are "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Chance, 143 F.3d at 702 (quoting McGuckin v. Smith, 974 F.3d 1050, 1059-60 (9th Cir. 1992)). "The Second Circuit, along with other circuits, has interpreted this standard as signifying that a defendant's act of deliberate indifference may form the basis of an Eighth Amendment claim based on a plaintiff's pain and suffering, even when the severity of a plaintiff's condition is not necessarily worsened by the act." Stevens v. Goord, 535 F. Supp. 2d 373, 384 (S.D.N.Y. 2008). To assess whether the alleged deprivation is objectively serious enough to support a prisoner's Eighth Amendment claim for "a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone." Smith v. Carpenter,

316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original). "[I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." Id. at 186 (citing Chance, 143 F.3d at 702-03).[10]

As for the subjective component of the test, an official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The subjective element requires a state of mind that is the equivalent of criminal recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553

---

[10] At one point defendants argue that to sustain an Eighth Amendment claim for denial or delay of medical care, plaintiff must establish that the conduct amounted to "a 'barbarous act' that 'shocks the conscience.'" (Defs.' Mem. at 16) (quoting United States ex rel. Hyde v. McGinnis, 429 F.2d 864, 866 (2d Cir. 1970); Church v. Hegstrom, 416 F.2d 449, 451 (2d Cir. 1969). However, we note that such a claim may be based simply on deliberate indifference, a test that may be satisfied, at least in some circumstances, by a showing of gross negligence. See, e.g. Doe v. New York City Dep't of Soc. Servs., 649 F.2d 134, 143 (2d Cir. 1981). See also Langley v. Coughlin, 715 F. Supp. 522, 537 & nn. 12-13 (S.D.N.Y. 1989). See text at pp. 36-37 & cited cases. To the extent that the standard cited by defendants sets a higher bar for plaintiffs, it is inapplicable.

(2d Cir. 1996). This element "'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id. (quoting Farmer, 511 U.S. at 835).

Allen does not challenge the adequacy of the medical treatment that he received after the altercation with three fellow inmates. Rather, he claims that Fallon deliberately caused an unnecessary delay in providing medical care by refusing to take him to the medical facility and leaving him in a holding cell elsewhere in the prison despite his apparent serious injuries and need for prompt medical attention. The parties do not dispute that there was an approximately 35-minute delay between Allen's injury and placement in cell and his receipt of medical treatment for his collapsed lung, a potentially life-threatening condition. (Pl.'s Aff. at p. 5).

In defendants' main papers, they argue only one point -- that, as a matter of law, a 35-minute delay from the time of injury to the initiation of medical treatment cannot establish an Eighth Amendment claim for denying medical treatment. (Defs.' Mem. at 16-18). In support of this position defendants rely heavily on Davidson v. Harris, 960 F. Supp. 644 (W.D.N.Y. 1997). In that case

the court granted defendant summary judgment on plaintiff's claim alleging a delay of six to eight hours in dispensing oxygen and pain killers for stab wounds to the back, chest and head. Id. at 648. It is clear, however, that Davidson is inapposite because the plaintiff in that case received continuous treatment starting immediately upon his arrival at the medical facility. Id. at 647. As the court there noted, the plaintiff had "from the time of his arrival[,] . . . received continuous treatment and evaluation of his condition . . . plaintiff's wounds were sutured and stapled, he was placed on a cardiac monitor, he was given oxygen, he was administered antibiotics, and he received medication for pain." Id.[11]

The notion that there is a bright line separating short delays from longer delays and that delays less than a specified amount of time are too brief to demonstrate deliberate indifference is not reflected in the case law. Rather, each case must be assessed on its own specific facts. See, e.g., Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984) (reversing grant of summary judgment and noting that if a five-hour delay in medical treatment was imposed to make plaintiff suffer it would constitute deliberate

_____

[11] We also note that, unlike the plaintiff in this case, Davidson's condition was never classified as life-threatening. Id. at 648.

indifference); see also Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (holding that "a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim"); Davidson, 960 F. Supp. at 648 (noting that conclusion about whether delay in providing medical care constitutes deliberate indifference is "highly fact-sensitive").[12]

The only evidence in the record on this claim comes from plaintiff and from his medical records. According to plaintiff, he was bloodied, his front teeth were broken, he was having difficulty breathing, and he was in severe pain. If this testimony is accepted -- as we must for present purposes -- a trier of fact could find not only that plaintiff was suffering from a serious medical condition necessitating prompt treatment, but that Fallon was aware of that fact.

---

[12] To the extent that other decisions have held that delaying medical treatment by minutes is insufficient to constitute deliberate indifference as a matter of law, we note that the plaintiffs' injuries in those cases were much less serious and life-threatening than Allen's. See, e.g., Tatum v. City of New York, 2009 WL 124881, * 2, 6 (S.D.N.Y. Jan. 20, 2009) (plaintiff suffered jaw and back pain, later diagnosed as fractured mandible after voluntary delay in obtaining x-ray); Ravenell v. Van der Steeg, 2007 WL 765716, * 4 (S.D.N.Y. Mar. 14, 2007) (plaintiff suffered fractured finger).

Plaintiff further testified that he asked Fallon to be taken directly to the medical unit, that Fallon refused, that in doing so Fallon commented that his condition was not severe, and that he instead placed Allen in a holding cell in a receiving room and simply left him there. Moreover, although plaintiff's testimony on this point is not a model of precision, a trier of fact could interpret it as saying that the holding cell was not located at or near the medical clinic and was not used for prisoners about to be transported to the clinic for treatment. If so read, his testimony can be a basis for finding that Fallon took no steps to obtain medical care -- whether promptly or not -- for plaintiff. Moreover, the testimony indicates that Fallon did not return to deliver plaintiff for treatment but rather that medical personnel eventually arrived, having presumably been summoned by other prison employees. (See Harvis Decl., Ex. M at 11 (Fallon "did nothing but put me in the bull pen in the receiving room and left.")).

This congeries of evidence could form a basis for a trier of fact to find that Fallon had no intention of summoning medical help despite plaintiff's evident need for it, that this conduct on his part reflected deliberate indifference by him, and that as a result plaintiff suffered needlessly without treatment for a short period of time.

In his response to the motion, Allen alleges that being placed in the holding cell for thirty-five minutes caused him "pain, fear, and suffering" and that he "start[ed] to have a panic attack." (Pl.'s Aff. at pp. 4-5). While the delay was relatively brief, we see no analytical basis for treating Fallon's alleged actions and inactions as necessarily not constituting deliberate indifference. If the criteria for an Eighth Amendment claim are met, the brevity of the delay would presumably impact the amount of potential damages, not the question of possible liability.[13]

Defendants also argue, in their reply memorandum, that Fallon could not possess the requisite level of culpability for deliberate indifference because, as a layperson, he could not have reasonably ascertained the severity of Allen's injury. (Defs.' Reply Mem. at 7-8). For reasons already noted, this argument cannot justify summary judgment. Certain of plaintiff's alleged injuries should have been readily apparent, and plaintiff represents that when

_____

[13] We recognize that the scenario outlined by plaintiff's testimony could be read somewhat differently -- that is, it might allow an inference that Fallon himself alerted the medical personnel to the need to treat plaintiff, and that the delay was attributable to logistical complexities or slowness on the part of the medical unit in responding. While at least a permissible inference, this scenario is certainly not compelled by the plaintiff's testimony, and defendants have chosen to proffer no evidence on this point from Fallon or anyone at the medical clinic. In short, this is a triable factual question that is material to plaintiff's claim.

41

Fallon arrived at his housing area he was "bent over in very serious [pain]", that he asked Fallon to take him "right to the facility's hospital" and that he told Fallon he "was experiencing pain in [his] chest area and that [he] was really having a hard time breathing." (Pl.'s Aff. at pp. 4-5). It is not a requirement for deliberate indifference that Fallon be able to diagnose a collapsed lung. Rather, the question is whether Fallon knew of, and disregarded, a substantial risk to the plaintiff's health. A reasonable jury, based on the facts as plaintiff reports them, could find that Fallon was aware of plaintiff's need for prompt medical attention and that he disregarded that need by placing plaintiff in a holding cell instead of taking him to the medical facility.

    Accordingly, there are issues of material fact in dispute, as to whether Fallon exhibited deliberate indifference in delaying medical treatment. Hence, this aspect of defendants' motion should be denied.

2. Right to Have Correction Officer Arrest or Charge
   Assailants

Fallon also seeks dismissal of plaintiff's further claim that Fallon's failure to arrest the inmate attackers or bring charges against them violated his Eighth Amendment rights. This motion should be granted. "There is no constitutional right to force an officer to make an arrest." Lewis v. New York City Police Dep't, 2000 WL 16955, *4 (S.D.N.Y. Jan. 10, 2000). Otherwise stated, "'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'" Leeke v. Timmerman, 454 U.S. 83, 85-86 (1981) (quoting Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)). Additionally, there is "no constitutional right to an investigation by government officials." Stone v. Dep't of Investigation, 1992 WL 25202, *2 (S.D.N.Y. Feb. 4, 1992); accord Lewis v. Gallivan, 315 F. Supp. 2d 313, 316-17 (W.D.N.Y. 2004).

Allen's claim that Fallon failed to investigate and arrest his assailants does not rise to the level of a constitutional violation. Accordingly, Fallon's motion to dismiss or for summary judgment on this claim should be granted.[14]

---

[14] We note that according to plaintiff, Fitzpatrick filed disciplinary charges against one of the three attackers.

E. Qualified Immunity


Apart from seeking summary judgment on plaintiff's claims against Fallon, defendants argue that both Fallon and Fitzpatrick are protected by qualified immunity, and that this defense may be upheld as a matter of summary judgment. We disagree.


Individual defendants are "'shielded from liability for civil damages'" under 42 U.S.C. § 1983 if "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); accord Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir. 2007). "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his] conduct was unlawful.'" Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003) (quoting Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998)).

A public official is thus entitled to qualified immunity if "'(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act.'" Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007) (quoting Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir. 2001)) (internal quotation marks omitted); see Field Day, LLC v. County of Suffolk, 463 F.3d 167, 191 (2d Cir. 2006); Curry v. City of Syracuse, 316 F.3d 324, 334 (2d Cir. 2003). Since qualified immunity is as an affirmative defense, defendants "bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time." Varrone v. Bilotti, 123 F.3d 75, 78 (2d Cir. 1997). In the event that there are triable disputes as to the circumstances that could dictate whether the defendants could reasonably believe that his conduct was lawful, summary judgment based on an immunity defense must be denied. See e.g., Curry, 316 F.3d at 334; Kent v. Katz, 312 F.3d 568, 576-77 (2d Cir. 2002).

1. Defendant Fitzpatrick

There is no dispute that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners" and if an official's failure to do so constitutes deliberate indifference and poses a "substantial risk of serious harm" to the inmates it violates the Eighth Amendment. Farmer, 511 U.S. at 833-34 (internal quotation marks omitted). See also Hendricks v. Coughlin, 942 F.2d 109, 113 (2d Cir. 1991) (noting that "an inmate's claim that prison officials failed, as a result of their deliberate indifference, to protect him from the violent actions of other inmates may state a viable § 1983 cause of action"). "In Eighth Amendment failure-to-protect cases, a prison official acts with deliberate indifference and thus 'has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.'" Lee v. Artuz, 2000 WL 231083, *5 (S.D.N.Y. Feb. 29, 2000) (quoting Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996)).

In a situation such as this, where the right is well established, an official may still enjoy immunity if it was objectively reasonable for him to believe that his action or

inaction was lawful at the time of the challenged act. <u>Jenkins</u>, 478 F.3d at 87. A reasonable trier of fact could easily reject that conclusion on the current record.[15]

Defendant Fitzpatrick argues that it was reasonable for him to believe that Allen faced no threats to his safety prior to the attack because Allen had not previously had any altercations with the inmates involved, and Allen did not warn DOC about any threatened attacks. (Defs.' Mem. at 20-21). This argument simply ignores the pertinent evidence. Plaintiff was transferred to protective custody because of the public revelation of the nature of his recent conviction, and he testified as to events suggesting that, following his transfer, Fitzpatrick told other inmates about Allen's conviction for the precise purpose of encouraging them to attack Allen, perhaps in retaliation for a dispute between Allen and Fitzpatrick that occurred soon after Allen's transfer. Moreover, plaintiff recounted that Fitzpatrick was present for the assault and made no attempt to stop the attack even though he was in a position to do so. Finally, plaintiff testified that

---

[15] We note that the evidence in the record could also support a conclusion by the trier of fact that Fitzpatrick violated Allen's Eighth Amendment rights by failing to protect him from being assaulted, a necessary prerequisite to determining that Fitzpatrick is not protected by qualified immunity. <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 200-01 (2001).

Fitzpatrick, having witnessed an unprovoked attack on him, falsely charged him with fighting, an account that further suggests a malign intent by the defendant. Viewing this evidence -- which is currently uncontroverted -- in favor of the non-moving party, a reasonable trier of fact could conclude that Fitzpatrick, at a minimum, knew of the risk of an attack (indeed, that he instigated it) and that he disregarded that risk by failing to take reasonable measures (or indeed any) to abate the harm. As a result, immunity cannot be granted on summary judgment.

## 2. Defendant Fallon

Fallon also argues that his actions in responding to the incident and transporting plaintiff to a holding cell were objectively reasonable. (Defs.' Mem. at 21). He further argues that there was no undue delay in providing medical treatment and that he was not responsible for any such delay. (Id.). These assertions do not justify summary judgment on the immunity defense.

It is well-established that intentional delay of medical treatment may state a claim of deliberate indifference to medical needs under the Eighth Amendment. Estelle, 429 U.S. at 104-105. For

reasons already noted, the evidentiary record could be read by a trier of fact as suggesting that Fallon was aware of a need for prompt medical attention to plaintiff's injuries and that he took action that was intended to, and did, delay such treatment and thereby extended plaintiff's suffering.

Necessarily, then, immunity cannot be upheld on summary judgment.

        F. Plaintiff's State-Law Claims


        Defendants argue that they are entitled to summary judgment on plaintiff's state-law claims because those claims are time-barred. Assuming that plaintiff is seeking to assert such claims -- his complaint is not explicit on this point and he does not address this aspect of defendants' motion -- we agree.[16]

---

        [16] Defendants also assert that section 24 of the New York Correction Law bars plaintiff's state-law claims against the individual defendants. (Defs.' Mem. at 22-23). We need not reach this issue in light of our conclusion that plaintiff's state-law claims are time-barred.

New York General Municipal Law ("GML") §§ 50-e and 50-i require that plaintiffs asserting state tort law claims against a municipal entity must (1) file a notice of claim within ninety days after the incident giving rise to the claim, and (2) commence a lawsuit within a year and ninety days from the date on which the cause of action accrues. N.Y. Gen. Mun. L. §§ 50-e and 50-i.[17] In addition, GML § 50-i requires that "it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice [of claim] and that adjustment or payment thereof has been neglected or refused . . . ." N.Y. Gen. Mun. L. § 50-i(1)(b). The failure to comply with these conditions is grounds for dismissal of the action. See Silberstein v. County of Westchester, 92 A.D.2d 867, 867, 459

---

[17] Although section 50-i refers only to claims asserted against a municipality or its agencies, the New York courts have held that any tort claim pressed against a City official who would be entitled to indemnification by the City must be the subject of an administrative claim under the General Municipal Law. See, e.g., Int'l Shared Servs., Inc. v. County of Nassau, 222 A.D.2d 407, 408, 634 N.Y.S.2d 722, 724 (2d Dep't 1995); Broadmeadow Lanes Inc. v. Catskill Reg'l Off-Track Betting Corp., 151 A.D.2d 631, 631, 543 N.Y.S.2d 91, 92 (2d Dep't 1989). The provision governing indemnification by the City of New York is section 50-k of the General Municipal Law. It requires indemnification of a municipal employee if his liability arose from conduct "within the scope of his public employment and in the discharge of his duties", provided that the employee was "not in violation of any rule or regulation of his agency at the time the alleged damages were sustained" and that the injury did not arise "from intentional wrongdoing or recklessness on the part of the employee." N.Y. General Municipal Law § 50-k(3).

N.Y.S.2d 838, 839 (2d Dep't 1983), <u>aff'd</u>, 62 N.Y.2d 675, 476 N.Y.S.2d 291 (1984).

———

    Plaintiff states in his complaint that he filed a notice of claim, "no. 2003P1025193," with the Office of the Comptroller of the City of New York  in "late 2003," but that the "Office said plaintiff had no claim." (Compl. at p. 5). Defendants correctly note that plaintiff failed to commence suit on these claims within one year and ninety days of the incident. That deadline expired on October 26, 2004, but plaintiff did not file his complaint until at least July 24, 2006. In short, any state-law claims would be time-barred.

<u>CONCLUSION</u>

    For the reasons noted, we recommend that defendants' motion be granted in part. Specifically, we recommend that plaintiff's state-law claims should be dismissed, as should plaintiff's claim regarding Fallon's alleged refusal to arrest or charge the inmates who attacked plaintiff. In all other respects, defendants' motion should be denied.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. See also Fed. R. Civ. P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Richard J. Sullivan, Room 615, and to the chambers of the undersigned, Room 1670, U.S. Courthouse, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Thomas v. Arn, 474 U.S. 140, 150-55 (1985), reh'g denied, 474 U.S. 1111 (1986).

Dated: New York, New York
       March 17, 2010

                                        MICHAEL H. DOLINGER
                                        UNITED STATES MAGISTRATE JUDGE

52

Copies of the foregoing Report and Recommendation have been mailed today to:

Mr. William M. Allen
#03-A-4303
Sullivan Correctional Facility
325 Riverside Drive
P.O. Box 116
Fallsburg, New York 12733-0116

Gabriel Harvis, Esq.
Assistant Corporation Counsel
  for the City of New York
100 Church Street
New York, New York 10007